Jaime ORTIZ, Appellant

v.

UNITED STATES, Appellee.

No. 98–CF–1243.

District of Columbia Court of Appeals.

Argued Jan. 7, 2008.
Decided Feb. 13, 2008[1].

1. The decision in this case was originally released as a Memorandum Opinion and Judgment on February 13, 2008. It is now being published by direction of the court.

Steven G. Polin, Washington, DC, appointed by the court, for appellant.

Ademuyiwa Bamiduro, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, and Robert E. Leidenheimer, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before KRAMER and BLACKBURNE–RIGSBY, Associate Judges, and KING, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

■ Appellant Jaime Ortiz was convicted of one count of second-degree child sexual abuse following a jury trial and one count of misdemeanor simple assault following a bench trial.[2] On appeal, he contends that the trial court abused its discretion by pressuring him to withdraw his guilty plea, or, alternatively, refusing to enter judgment on his guilty plea, and that insufficient evidence supported his conviction for second-degree child sexual abuse.[3] Finding no error, we affirm.

## I.

On a summer afternoon in 1996, C.E. and her younger brother R.E. were picked up after school by their mother and her long-time boyfriend Jaime Ortiz, who C.E. had thought of as her "stepfather" for the past four years. After C.E.'s mother went to work, Mr. Ortiz took C.E. and R.E. to Theodore Roosevelt island. Mr. Ortiz suggested that the children take off their pants before they got into the water. C.E. removed her pants and dipped her feet in the river. When she went to dry off, Mr. Ortiz asked C.E. when she planned to lose her virginity and whether she had gotten her period yet. C.E. testified that she went to play with her brother because Mr. Ortiz's questions and earlier request that

---

2. Respectively, the citations are D.C.Code §§ 22–3009 and –404 (2001).

3. On appeal, Mr. Ortiz raises three other challenges. First, the prosecutor's threat to use the "power of subpoena" and refusal to drop the case upon C.E.'s request were not improper, *see In re Ragland*, 343 A.2d 558, 559 (D.C.1975), nor was C.E.'s two-week stay with and receipt of gifts from Detective Moss and her family. *See Newman v. United States*, 705 A.2d 246, 263 (D.C.1997) (refusing to dismiss indictment where investigating police officer had steady sexual relationship with witness). There was no prejudice or likelihood that the jury's verdict was substantially swayed because the jury heard (1) C.E.'s testimony that she was never told what to say by Detective Moss or the prosecutor, and (2) defense counsel's theory in opening, closing, and cross-examination that C.E. fabricated her account of events due to pressure from Detective Moss and the prosecutor prior to convicting Mr. Ortiz. *See Brown v. United States*, 864 A.2d 996, 1003 (D.C.2005). Second, C.E.'s brother R.E.'s testimony was not "newly discovered evidence" entitling Mr. Ortiz to a new trial because his testimony was both known and available to the defense prior to trial, defense counsel made no effort to procure his testimony, and R.E.'s testimony, which was corroborative of C.E.'s testimony and in no way contradictory, was not of such a nature that "acquittal would likely result from its use." *See Byers v. United States*, 649 A.2d 279, 287 (D.C.1994). Third, Mr. Ortiz's challenge under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) fails because there is still "no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280–81, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

she remove her pants made her "uncomfortable."

After playing with her brother, C.E. ended up sitting next to Mr. Ortiz, who told her to sit between his legs on the towel so that she would not get dirty by sitting on the ground. C.E. sat on the ground, but Mr. Ortiz again told her to sit on his lap so that she would not get dirty. When C.E. sat on his lap with her back to him then, Mr. Ortiz told her to turn around. When she turned around, Mr. Ortiz kissed her on her mouth and inserted his tongue into her mouth. C.E. testified that then he began pushing "his private part" against her "bottom." He moved "from side to side, well, forward and backward." She testified that she felt "uncomfortable" but did nothing because she was "scared he could have done more." When Mr. Ortiz stopped, C.E. began to cry, and he told her "[d]on't tell anyone about what just happened" before she left to find her brother.

## II.

### A. The Guilty Plea

■■■ Mr. Ortiz contends that the trial court abused its discretion by pressuring him to withdraw his guilty plea, or, alternatively, by refusing to enter judgment on his guilty plea. The trial court did not exert any pressure on Mr. Ortiz to withdraw his guilty plea nor did it *sua sponte* vacate the plea and set a trial date. Defense counsel moved orally to withdraw his plea at the sentencing hearing on May 8, 1997. Judge Walton's questions and statements demonstrated his degree of uncertainty as to what Mr. Ortiz wanted to do. At the beginning of the hearing, Judge Walton stated, "*I guess* we have to set a trial date" because "we have to set a trial date if [Mr. Ortiz is] saying he didn't do this" so "if Mr. Ortiz wants to go to trial, we can set this matter for a trial date."

(emphasis added). Defense counsel did not refute the trial court's understanding that Mr. Ortiz wanted to go to trial and made no effort to save the guilty plea; rather, defense counsel suggested that they pick a trial date. Furthermore, when the case was transferred from Judge Walton to Judge Greene, defense counsel did not attempt to revive the plea and, to the contrary, did not object when the prosecutor stated that "there have been no requests by the defense about making an additional plea offer." Then, at sentencing before Judge Greene, defense counsel again did not object to the prosecutor's statement that defense counsel had not sought to reopen plea negotiations. Taken together, these acts and omissions by defense counsel support the conclusion that defense counsel not only intended to withdraw the guilty plea in front of Judge Walton (by making an oral motion) but also intended to proceed to trial (by not raising the issue later in front of Judge Greene). The trial court did not abuse its discretion by permitting Mr. Ortiz to voluntarily withdraw his guilty plea.

■■■ Even if Mr. Ortiz had not moved to withdraw his guilty plea, the trial court properly refused to enter judgment on it. The "decision whether to accept or reject a guilty plea is lodged in the discretion of the trial court." *Hockaday v. United States*, 359 A.2d 146, 148 (D.C.1976). A defendant does not have an "absolute right to have a guilty plea accepted." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The trial judge should not enter judgment on a guilty plea unless it is satisfied that there is a factual basis for doing so. Super. Ct.Crim. R. 11(f). Even after a factual basis for a plea is established, a trial court may still reject a plea and refuse to enter judgment when the defendant maintains his innocence. *See United States v. Rash-*

*ad,* 364 U.S.App.D.C. 368, 371–72, 396 F.3d 398, 401 (2005); *Gooding v. United States,* 529 A.2d 301, 305 n. 6 (D.C.1987) (per curiam) (en banc) (when interpreting Super. Ct.Crim. R. 11, the District of Columbia Court of Appeals looks to federal courts construing their analogous Rule 11 of Criminal Procedure).

 In this case, Judge Walton explained that, even though the hearing was scheduled as a sentencing hearing, Mr. Ortiz's denials to the probation officer, which were contained in the Pre–Sentence Report, meant that he could not sentence "an innocent [person]." Specifically, Judge Walton noted that Mr. Ortiz told the probation officer twice that "he *accidentally* kissed [C.E.] on the lips," that "he denie[d] having done anything inappropriate," and that C.E.'s "allegations are fabrications made up against him." (emphasis added). Judge Walton was appropriately concerned that these statements not only undermined the factual basis of the plea— namely, that he had not either committed the necessary act of "sexual contact" nor possessed the specific intent necessary to constitute misdemeanor sexual abuse [4]— but they also supported the conclusion that Mr. Ortiz was professing his innocence. As such, under Super. Ct.Crim. R. 11, the trial court was properly concerned that it lacked a factual basis and that the defen-

dant was maintaining his innocence—both conclusions which would have precluded it from entering judgment on Mr. Ortiz's guilty plea.[5] *See United States v. Gomez–Gomez,* 822 F.2d 1008, 1011 (11th Cir.1987) (no abuse of discretion when trial court rejected defendant's guilty plea after he "cast[ ] doubt upon the validity of [it] by protesting his innocence or by making exculpatory statements" in his pre-sentence report); *United States v. Ray,* 431 F.2d 1177, 1178 (9th Cir.1970) (no abuse of discretion when trial court rejected defendant's guilty plea after he professed his innocence in his pre-sentence report). The trial court did not abuse its discretion by refusing to enter judgment on Mr. Ortiz's guilty plea.

### B. Sufficiency of The Evidence

 Neither are we persuaded by Mr. Ortiz's contention on appeal that the evidence was insufficient to support his conviction for second-degree child sexual abuse. In determining whether the evidence is sufficient to support a conviction, we must "review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987).

---

4. The crime of misdemeanor sexual abuse occurs when an individual "engages in a sexual act or sexual contact with another person and who should have knowledge or reason to know that the act was committed without that other person's permission." D.C.Code § 22–3006. As discussed *supra,* sexual contact is *defined as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."* D.C.Code § 22–3001(9).

5. In certain circumstances, a court may constitutionally accept a guilty plea from a defendant who claims innocence if the record "contains strong evidence of actual guilt." *North Carolina v. Alford,* 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Mr. Ortiz's plea was not an *Alford* plea because the government did not consent to such a plea and the record was not augmented with a basis for it. *See Godwin v. United States,* 687 F.2d 585, 590 (2d Cir.1982).

"This court may reverse the trial court's denial of such a motion only by finding that the evidence, viewed in the light most favorable to the government, is such that no reasonable juror could fairly find guilt beyond a reasonable doubt." *Howard v. United States*, 656 A.2d 1106, 1110 (D.C. 1995).

The government's evidence was sufficient for a reasonable juror to find that Mr. Ortiz engaged in second-degree child sexual abuse. D.C.Code §§ 22–3001, – 3009. Second-degree child sexual abuse has four elements: (1) the victim was under 16 years of age; (2) the defendant was more than four years older than the victim; (3) the defendant engaged in sexual contact; and (4) the defendant intended by that sexual contact to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire" of himself or the victim. D.C.Code §§ 22–3001(3), (9), –3009. In this case, the first two age-related elements were supported by C.E.'s testimony that she was 11–years–old at the time of the incident and the parties' stipulation that Mr. Ortiz was 33–years–old—more than four years older than C.E.—at the time of the incident.

The third element of sexual contact, which is defined as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person," was established by C.E.'s testimony that Mr. Ortiz pushed "his private part" against her "bottom" and that he moved himself "from side to side, well, forward and backward" against her. D.C.Code § 22–3001(9). When asked repeatedly by the government what she felt rubbing against her buttocks, C.E. testified that it was Mr. Ortiz's genitals and not the zipper on his pants. Viewing the evidence in the light most favorable to the government, a rea-sonable juror could infer that this touching of Mr. Ortiz's clothed genitalia and inner thigh region with C.E.'s buttocks met the definition of "sexual contact" under D.C.Code § 22–3001(9).

The fourth element of intent to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire" was supported by Mr. Ortiz's actions. *Langley v. United States*, 515 A.2d 729, 732 (D.C.1986) (intent may be inferred from totality of circumstances). Viewing the evidence in the light most favorable to the government, a reasonable juror could infer that Mr. Ortiz's actions in asking C.E. a variety of intimate questions prior to taking her to a more secluded location where he kissed her and gyrated his genitalia against her buttocks was evidence of his intent to either arouse or gratify himself in some way. *See Harkins v. United States*, 810 A.2d 895, 901 (D.C.2002) (sufficient evidence of intent in misdemeanor sexual abuse case when appellant rubbed his leg and hand against victim's thigh and buttock, followed her as she moved seats repeatedly on train despite her protestations, called her "baby," and asked her to call him).

*Affirmed.*