Kenneth M. NEWMAN, Appellant,

v.

UNITED STATES, Appellee.

No. 09–CM–372.

District of Columbia Court of Appeals.

Submitted June 9, 2010.
Decided Aug. 2, 2012.

William P. Farley filed a brief for appellant. On April 3, 2012, this court granted Mr. Farley's motion to withdraw as counsel and appointed A. Kevin Fahey, Washington, DC, to represent appellant.

Channing D. Phillips, United States Attorney at the time the brief was filed, Roy W. McLeese III, Assistant United States Attorney at the time, and Mary B. McCord and Jonathan P. Hooks, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and THOMPSON, Associate Judges, and RUIZ, Senior Judge.*

FISHER, Associate Judge:

Following a non-jury trial, appellant Kenneth Newman was convicted of attempted possession of a controlled substance (marijuana), in violation of D.C.Code §§ 48–904.01(d), 48–904.09 (2001).[1] He asserts that the evidence was

---

* Judge Ruiz was an Associate Judge of the court at the time of submission. Her status changed to Senior Judge on July 2, 2012.

1. Appellant originally was charged with possession of marijuana. Before the start of trial, the government announced that it was proceeding on the lesser-included offense of attempted possession, explaining that "the chemist who did the analysis [of the drugs]" had since left the Drug Enforcement Administration.

insufficient to sustain that conviction and that reversible error occurred when an officer testified about a field test he conducted on the green plant material. We disagree, and affirm.

## I. The Government's Evidence

On the evening of August 15, 2008, at about 7:30 p.m., Officer Zachary Melby and his partner, Officer Duane Johnson, were in the 1400 block of K Street, Southeast, a place known to Officer Melby as a "high drug trafficking" area. Officer Melby was driving an unmarked blue Ford Taurus that he had driven "a lot" in that neighborhood over the years. Both officers were wearing plain clothes, but Officer Melby wore his badge hanging about fifteen inches below his chin.

While driving eastbound toward the intersection of 15th and K Streets, Southeast, Officer Melby saw appellant sitting on a wall alongside 935 15th Street, "looking down with a white piece of paper in his hand." The officer demonstrated that appellant was "cupping his hands in a palm upward manner." Officer Melby "slowed down and actually stopped." Appellant then "looked up" and made eye contact with the officers, who were less than twelve feet away. When appellant saw the officers, he "immediately got up and at a fast pace[ ] walked to the alley leading behind" where he had been sitting. Officer Melby explained that "the piece of paper was sticking, was protruding from his hand rather, and he looked up at us, immediately got up and moved quickly to the entrance of the alley." At that time, Officer Melby could not see what was in the paper. As appellant left, he was still carrying the white paper in his hand.

When appellant moved away at "a very fast pace," Officer Melby "immediately made a u-turn [and] drove into the alley[,]" losing sight of appellant for about twenty seconds. As Officer Melby drove into the alley, his partner told him to stop because the piece of white paper "was sitting on a brick wall." [2] When Officer Melby stopped in the alley, appellant was about a car length and a half from the officers, walking away. No one else was in the alley.

The officers got out of their car. Officer Johnson looked inside the white piece of paper and told Officer Melby to stop appellant, announcing "I got marijuana." Officer Melby saw "the same piece of [white] paper" on the wall, next to Officer Johnson's passenger door. Officer Melby recognized the paper on the wall because it "was sticking up" in "the same way" as "[t]he piece of paper that [appellant] had in his hand[.]" When appellant was holding the paper, a "portion of it was sticking up above his hands." When "we turned the corner into the alley, it was sitting there the same exact way it was, the same exact way." Officer Melby also saw a plastic zip-loc bag next to the paper on the wall.. There was nothing else on the wall.

Officer Melby told appellant to come back, and appellant did so. The officers searched appellant and found no drugs, empty zip-locs, or "anything like that[.]" Officer Johnson had placed the white piece of paper and the zip-loc bag on the hood of the police car. Both contained a green weed substance. "[I]t smelled like marijuana" and it looked like marijuana. Later, at the First District Vice Office, Officer Melby conducted a field test, which gave a color reaction indicating that the green plant material was marijuana.

**2.** This was not the "same wall" on which appellant had been sitting. It is not clear from the record if this brick wall was located perpendicular to, or entirely separate from, the wall on which the officers saw appellant sitting.

## II. The Court's Findings

The trial court made detailed findings of fact consistent with the evidence summarized above and found appellant guilty. "As the officers come in behind him, the white piece of paper that he had in his hand is now on the wall with the marijuana on it." Moreover, "the act of discarding the piece of paper clearly shows that he knew that it was something illegal." "[H]e gets up, walks away, . . . and then quickly gets rid of the white paper which contains the green weed-like substance. . . ."

## III. Analysis

### A. The Evidence Was Sufficient

■■■ Our standard of review is well-established. "[W]e must view the evidence in the light most favorable to the government, recognizing the factfinder's role in weighing the evidence, determining the credibility of witnesses, and drawing justifiable inferences from the evidence." *Mihas v. United States*, 618 A.2d 197, 200 (D.C.1992) (internal quotation marks and citation omitted). "[T]he evidence need only *permit* a reasonable [fact-finder] to find guilt beyond a reasonable doubt; it need not compel such a determination." *Taylor v. United States*, 601 A.2d 1060, 1062 (D.C.1991). To succeed in this challenge to the sufficiency of the evidence, appellant "must establish that the government presented 'no evidence' upon which a reasonable mind could find guilt beyond a reasonable doubt." *Mihas*, 618 A.2d at 200.

■■■ Here, the direct and circumstantial evidence was sufficient to prove that appellant actually possessed the green substance in the white paper. *See In re A.L.*, 839 A.2d 678, 680 n. 5 (D.C.2003)

("We do not reach [the] issue [of constructive possession], for the circumstantial evidence showed that A.L. had the marijuana in his *actual* possession before putting it in the drainpipe."). Although appellant was charged with *attempted* possession, "[e]very completed criminal offense necessarily includes an attempt to commit that offense." *Thompson v. United States*, 678 A.2d 24, 27 (D.C.1996) (quoting *Ray v. United States*, 575 A.2d 1196, 1199 (D.C. 1990)). "The *mens rea* element requires proof that appellant had the 'intent to commit the crime[ ]' of attempted possession of a controlled substance (in this case, marijuana)." *Fields v. United States*, 952 A.2d 859, 865 (D.C.2008) (quoting *Blackledge v. United States*, 447 A.2d 46, 48 (D.C.1982)). But the substance "need not have been a controlled substance at all; what matters is that appellant believed it to be one." *Washington v. United States*, 965 A.2d 35, 43 (D.C.2009). "[T]he identity of a controlled substance, or the defendant's belief that he was dealing in controlled substances, may be proved by circumstantial evidence. . . ." *Fields*, 952 A.2d at 865.

Here, both appellant's behavior and the characteristics of the green plant material indicate that appellant knew (or believed) that the substance was marijuana. Immediately after making eye contact with Officer Melby, appellant got up and moved away at "a very fast pace." Even though the officers were wearing plain clothes and did nothing to identify themselves as police,[3] it is a reasonable inference, within the purview of the fact-finder, that appellant at least suspected that Officers Melby and Johnson were police. More importantly, appellant clearly sought to distance himself from the white piece of paper. Although he took it with him when he got

---

**3.** The trial court found that appellant could not have seen the badge around Officer Mel-

by's neck because it was hanging too low.

up and moved away, appellant's discarding of the white paper containing the green substance shows appellant's belief that he was holding a controlled substance. As the trial court explained, "the act of discarding the piece of paper clearly shows that he knew that it was something illegal."

We recognize that the government's case was largely circumstantial, and that appellate review of sufficiency claims is not "toothless." *Rivas v. United States*, 783 A.2d 125, 134 (D.C.2001) (en banc). However, "[i]t is within the province of the fact finder to draw reasonable inferences from the evidence presented." *Smith v. United States*, 837 A.2d 87, 93 n. 3 (D.C.2003); *see Coleman v. Johnson*, ── U.S. ──, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012) ("*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)))).[4] This is not a case where the trier of fact "cross[ed] the bounds of permissible inference and enter[ed] the forbidden territory of conjecture and speculation." *Rivas*, 783 A.2d at 134 (internal quotation marks and citation omitted). We therefore are not prepared to say that, when the evidence in this case is "view[ed] . . . in the light most favorable to the prosecution, [*no* ] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

### B. The Field Test

■ After he had returned to the First District Vice Office, Officer Melby con-ducted a field test on the green plant material. The purple color reaction indicated to him that the substance was marijuana. Cross-examination revealed that Officer Melby knew very little about the accuracy of the field test or how it worked. "We've been taught that once it turns purple, and in fact has a presence of THC, then it's marijuana." Defense counsel pressed harder: "Somebody told you at some point. They said, you put it in there, it turns purple, it's marijuana?" Officer Melby responded, "That's correct."

Claiming that his right to confrontation was violated, appellant asserts that he "should have been permitted to cross-examine the person who told Officer Melby that if he saw purple it was marijuana." In other words, appellant claims that "[t]he trial court denied [him] his rights when she refused to permit him to cross examine the person who instructed Officer Melby and who could explain the field test. . . ." Appellant misconstrues the right of confrontation. This is not a case where the government introduced a forensic report without calling the person who prepared it. *See Bullcoming v. New Mexico*, ── U.S. ──, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011); *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). Instead, Officer Melby was testifying from personal knowledge about a test that he performed himself.

Appellant's argument is akin to saying that, whenever a DEA chemist testifies about the identity of a controlled substance, the government is required to call the professors who taught him chemistry in college and the supervisors who trained him at the DEA lab. But, not surprisingly, appellant cites no authority for such a broad interpretation of the confrontation

---

4. We reject appellant's argument that, by relying on inferences drawn from circumstantial evidence, the trial court shifted the burden of proof to him. *See Price v. United States,* 985 A.2d 434, 438–39 (D.C.2009) (trial court may draw reasonable inferences from basic facts).

clause. *Cf. Melendez–Diaz,* 129 S.Ct. at 2532 n. 1 ("[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case.").

■ Appellant fares no better by claiming that Officer Melby's testimony violated the rules against hearsay. "Most knowledge has its roots in hearsay." *Robinson v. Watts Detective Agency,* 685 F.2d 729, 739 (1st Cir.1982). But repeating a statement made by someone else "is different from a statement of personal knowledge merely based, as most knowledge is based, on information obtained from other people." *Agfa–Gevaert, A.G. v. A.B. Dick Co.,* 879 F.2d 1518, 1523 (7th Cir.1989). "Knowledge acquired through others may still be personal knowledge ..., rather than hearsay...." *Id.* And although Officer Melby repeated, or confirmed, what others had told him about the field test, that occurred on cross-examination, a situation about which appellant cannot complain. *See Parker v. United States,* 757 A.2d 1280, 1286–87 (D.C.2000) ("It is well established that a defendant cannot well complain of being prejudiced by a situation which [he] created." (internal quotation and citation omitted)). Moreover, these statements were not testimonial within the meaning of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and its progeny.

■ Cross-examination revealed that Officer Melby knew little about the

science on which the field test depended or about the rate of false positives. These complaints affect the weight of the evidence, not its admissibility. Ultimately appellant's arguments boil down to a claim that the officer's testimony about the field test was insufficient to prove that the substance was marijuana. But the field test was not necessary to prove attempted possession.[5] The appearance, smell, and packaging of the substance, and appellant's eagerness to discard it, amply supported the court's conclusion that he believed the green weed-like material to be marijuana.

## IV. Conclusion

The judgment of the Superior Court is hereby

*Affirmed.*

RUIZ, Senior Judge, dissenting:

I do not agree that the evidence in this case was sufficient to convict appellant beyond a reasonable doubt of attempted possession of marijuana.[1] As was the case in *Rivas v. United States,* 783 A.2d 125, 133 (D.C.2001) (en banc), "this truly is a case that turns not on the absence of proof, but on the difference between the reasonable doubt standard and less stringent standards of proof."

Although the case was tried as attempted possession, the government's theory was that appellant had actually possessed the marijuana. *See (Karen N.) Thompson v. United States,* 678 A.2d 24, 27 (D.C. 1996) (noting that actual distribution of

---

5. Of course, the government may prove an attempt by proving a completed crime, and thus it could have convicted appellant by proving that the substance was in fact marijuana. While "not dispositive[,]" the positive field test "does constitute evidence that the substance recovered ... was marijuana...." *Duvall v. United States,* 975 A.2d 839, 845–46

(D.C.2009). But the government reduced the charge to attempted possession so it would not have to prove that fact.

1. Accordingly, I do not reach appellant's second claim alleging a violation of the Confrontation Clause.

drugs "necessarily showed an attempted distribution"). The government argues that the evidence sufficed to support the trial court's finding that appellant had possessed the marijuana the officers found in the alley. My colleagues agree the trial court reasonably could infer that appellant initially had the marijuana in the paper Officer Melby saw in his hand while he was sitting outside the alley, and then went into the alley and left the paper with the marijuana on the alley wall (where the officers found it) as a way of disassociating himself from the drugs immediately after he saw the police officers. There was no direct evidence, in other words, that appellant had been holding marijuana in his hand, because the officers could not see what—other than a piece of white paper—appellant held in his hand. Nor was appellant seen placing the white piece of paper on the wall in the alley where it was found—a wall that, as Officer Melby testified, was *not* the same wall as the one where appellant had been sitting outside the alley. Appellant's fingerprints were not found on the white piece of paper with marijuana discovered on the alley wall or on the zip-loc bag next to it. When appellant was searched, the officers did not find any marijuana or drug paraphernalia on him; or tell-tale amounts of cash from drug-dealing. The record is silent as to whether he had a piece of white paper.

My dissent is not based on the fact that the government's case depended entirely on circumstantial evidence, for "[i]n assessing the sufficiency of the government's proof, we make no distinction between direct and circumstantial evidence." *Bernard v. United States,* 575 A.2d 1191, 1193 (D.C.1990). Moreover, the trial court, as fact-finder, is entitled to make reasonable inferences. Inferences, however, must have a firm foundation in the evidence. *See Rivas,* 783 A.2d at 153. And if they are to support a finding of guilt beyond a reasonable doubt, inferences cannot be so attenuated as to be "mere possibilities"— "[a]n inference built upon another inference is too tenuous an evidentiary foundation to support a criminal conviction." *Malloy v. United States,* 246 A.2d 781, 783 (1968). In my view, the evidence presented in this case provided some support to suspect that appellant possessed the marijuana, but it was not enough to meet the demanding burden of proof beyond a reasonable doubt.

Here, the government's case depended on two inferences from the circumstantial evidence, namely, that appellant decided to walk away *because* he was reacting to the presence of the officers, and that the piece of paper that appellant had in his hand when he was seen sitting on a wall outside the alley was *in fact* the same piece of paper with the marijuana that the officers found on a wall in the alley. The first inference, if reasonable, would be relevant to the extent it suggests a consciousness of guilt, i.e., that appellant walked away upon seeing the officers because he knew he was holding an illegal substance. The inference of consciousness of guilt in this case, however, was exceedingly weak. The first point to note is that while "[i]t is universally conceded that an accused's flight or disappearance is admissible as evidence of consciousness of guilt," *Williamson v. United States,* 445 A.2d 975, 981 (D.C. 1982), flight is not, by itself, conclusive evidence of guilt of a specific crime. As the D.C. Circuit has explained:

> With cautious application in appreciation of its innate shortcomings, flight may under particular conditions be the basis for an inference of consciousness of guilt. But guilt as a factual deduction, must be predicated upon a firmer foundation than a combination of unelucidated presence and unelucidated flight. Here there was no evidentiary manifes-

tation that the appellant was prompted by subjective considerations related in any wise to the crime.

*Bailey v. United States,* 416 F.2d 1110, 1115 (D.C.Cir.1969). Appellant's actions in this case were similarly "unelucidated." There was nothing out of the ordinary, suggestive of criminal activity, when the officers first saw appellant holding a piece of white paper in his hand. Officer Melby testified that, for all he knew, appellant could have been holding "a cheeseburger" in his hand. Appellant's so-called "flight," moreover, was not a headlong run away from a police encounter, and there is no evidence that appellant was nervous, or resistant. In fact, he readily complied when the officers asked him first, to stop, and then, to return. *See Rivas,* 783 A.2d at 136 (noting that defendant did not engage in "headlong flight or anything close"); *cf. United States v. Bennett,* 514 A.2d 414 (D.C.1986) (noting that appellant and companion "bolted" and "fled" after unmarked police car arrived). Appellant was not seen "tossing or dropping" contraband immediately after being alerted to the presence of law enforcement, the "dropsy" situation Officer Melby described in his testimony. *Cf. Howard v. United States,* 867 A.2d 967, 972 (D.C.2005) (noting officers saw defendant "tossing or dropping objects" as he walked away from police officers arriving on the scene).

Of critical importance is that there was scant, if any, evidence from which it could reasonably be inferred that appellant went into the alley in response to the presence of police. Officers Melby and Johnson were in plain clothes, in an unmarked car. Officer Melby did not show his badge to appellant, or announce that they were officers, or turn on a siren or emergency light. *Cf. Tobias v. United States,* 375 A.2d 491, 492 (D.C.1977) (noting that appellant began running after police officer identified himself as a law enforcement agent). No one in the neighborhood alerted appellant to the presence of police. *Cf. Howard,* 867 A.2d at 972 (noting that someone yelled "jumpouts," a code name for police). There was only the slightest evidence from which an inference could be drawn that a person familiar with the neighborhood would have suspected that the two men in the Ford Taurus were law enforcement officers: that the unmarked car had been in use for some time in that neighborhood. But there was *no* evidence that appellant was aware of that fact. To the contrary, Officer Melby testified that he had "never s[een] [appellant] before," and there was no evidence that appellant knew either of the officers, or lived in or frequented the neighborhood that Officer Melby regularly patrolled in the unmarked car.[2] Appel-

**2.** On cross-examination, Officer Melby was asked point-blank whether he thought appellant had "recognized [the officers] as the police." Officer Melby confirmed "that was not my testimony." Nonetheless, the trial court commented that because the officers were in an unmarked car they had been using "for quite some time," it would be "pretty clear" they were police officers. Even if this were the type of fact as to which the court may take judicial notice, *see Craig v. United States,* 490 A.2d 1173, 1177 n. 3 (D.C.1985) ("Courts may properly take judicial notice of facts that a reasonable person with reasonable knowledge of the District of Columbia community would understand.") (citation and internal quotation

marks omitted), a finding of guilt must be based on evidence presented in the case. Here, there was no evidence that appellant knew, or even had a basis for knowing, that the Ford Taurus was in fact an unmarked police vehicle such that it would have been "pretty clear" *to appellant,* as the trial court surmised, that there were two plainclothes officers watching him from the unmarked car. We have rejected that faulty reasoning in the context of whether officers had reasonable articulable suspicion to stop a suspect. *Smith v. United States,* 558 A.2d 312, 317 (D.C.1989) (en banc) ("[T]he government would have us conclude that when a sufficiently high per-

lant's walking into the alley, in short, was equally consistent with innocent behavior, in the words of appellant, simply "[w]alking briskly away from a couple of men staring at you." Because there is insufficient evidence to support that appellant recognized the two men as police officers, or that he walked into the alley in order to flee the police, there was no basis from which to infer consciousness of guilt, and from that, to make the further inference that appellant's guilt was related to knowledge that he had marijuana. *Cf. Rivas,* 783 A.2d at 136 (assuming defendant had decided to walk away upon seeing arrival of police, and noting that "even leaving a scene hastily may be inspired by innocent fear, or by a legitimate desire to avoid contact with the police") (quoting *In re M.I.W.,* 667 A.2d 573, 577 (D.C.1995)).

The second inference necessary for conviction—that the white piece of paper with marijuana found on the alley wall was the same piece of paper appellant had been holding in his hand while he was sitting outside the alley—is similarly weak. Officer Melby testified that appellant had a piece of white paper in his hand when the officer first saw him. Appellant was not seen placing the white paper with the marijuana on the wall, or even standing protectively by it, even though the officers followed him into the alley, according to

Officer Melby, within only "ten to fifteen" seconds from when they saw him sitting outside the alley. Instead, Officer Melby testified, when appellant was stopped, he was "walking"—not running—"through the alley," and was a full "car length-and-a-half" from the piece of paper on the wall. The area where the marijuana was found, moreover, was not one that appellant controlled, but a public outdoor space, an alley. *Cf. Moore v. United States,* 927 A.2d 1040, 1050 (D.C.2007) ("Evidence showing the accused's control or occupancy of the premises in which the contraband is found may also serve to prove constructive possession."); *Taylor v. United States,* 662 A.2d 1368, 1373 (D.C.1995) ("It is usually easy to establish that the owner of a car or the occupant of a living area has constructive possession of illicit items recovered from these places."). Even if appellant was the only person in the alley at the exact moment the officers saw the marijuana on the alley wall, there could well have been others there before him who might have put the drugs on the wall on an early summer evening with "nice" weather in an area Officer Melby said was "known for high drug trafficking, as far as, people buying and selling narcotics." If, as Officer Melby testified,[3] the drugs could have been left on the wall as a stash by a drug

centage of people in some neighborhoods may recognize [plainclothes] jump-out squads, an officer can rationally and reasonably conclude that one particular person has made such an identification ... [W]e reject this notion of locational taint whereby an individual's behavior is explained by reference to what others in that area or neighborhood may know...."). It is even less tenable when the burden is proof of guilt beyond a reasonable doubt.

3. Officer Melby testified that it is "pretty common" to find drugs that "have been placed some place ... [as a] stash spot.... [And] it wouldn't be uncommon ... [to] walk through an alley or some other secluded place and

find drugs, such as the drugs here in this sort of amount." However, on re-direct examination, Officer Melby contradicted himself, saying that the location of the zip-loc bag of marijuana was not a "normal" "stash spot" because "any given chance that a normal Joe Blow [could] walk through the alley and saw it would probably pick it up if he knew nobody was watching. Most of the time if it's a stash, they'll hide it behind a rock, behind a wall, underneath the wall or anywhere that it is out of sight and only they know where it's at." The trial court mentioned both aspects of Officer Melby's testimony in its findings but did not resolve the conflict between them.

dealer, it is all the more necessary that there be evidence connecting the drugs to appellant, who was charged with simple possession, not drug dealing. In this case, the government sought to establish that connection through Officer Melby's testimony that the piece of white paper with the marijuana found on the alley wall was "sticking up ... the same exact way" as the piece of white paper he had seen in appellant's hand moments earlier. Officer Melby, however, could not describe the piece of paper appellant had been holding other than to say it was white, and that it was "sticking up." [4] Without more, Officer Melby's identification of what appears to have been a generic piece of white paper he could barely describe, is too slim a reed on which to base a criminal conviction that requires proof beyond a reasonable doubt.[5] "Slight evidence is not sufficient evidence; a 'mere modicum' cannot 'rationally support a conviction beyond a reasonable doubt.'" *Rivas*, 783 A.2d at 134 (quoting *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

There was no other fact presented at trial that, viewed in context, could reasonably have connected appellant to the drugs found in the alley. When Officer Johnson went to the wall and said "I got marijuana," Officer Melby called to appellant to stop and told him to "come back." Appellant did not resist, or try to escape; to the contrary, according to the trial court, appellant "was totally compliant with what they told him to do." *Cf. id.* at 136–37 ("Rivas[ ] ... exiting the car when he (presumably) saw the[ ] [police] drive up, leaving the door open ..., and walking ... out of sight when the officers approached the car on foot ... [is] too equivocal to be informative ... [about] [his] intentions vis-a-vis the drugs."). He had no drugs or drug-related paraphernalia on him or suspicious large amounts of cash. *See id.* at 129 ("No incriminating evidence was taken from Rivas's person. . . ."). There was no testimony that appellant appeared to be high on drugs. Nor had Officer Melby observed appellant act in a suspicious manner while he was holding the white piece of paper in his hand.[6] There was no evidence

4.

> [Defense Counsel]: The paper itself didn't bear any markings that you recognized while you were sitting in the car, correct?
> [Officer Melby]: No, all I saw was a white piece of paper.
> Q: All right, by white piece of paper, are we talking about an eight and a half piece of paper, 8.5 × 11 piece of paper, like this?
> A: I don't know what size it was until we stopped him, but the paper, he had his hands cupped, like I explained earlier and you could see the paper sticking above his hands.
> Q: So, basically, what you saw was pieces or portions of a white piece of paper?
> A: I saw a piece of paper.
> Q: You saw a piece of paper. I'm asking you, you couldn't see what was in the paper, if anything, right?
> A: No.
> Q: You just saw a white piece of paper.
> A: Right.

> Q: Right, and you didn't see any markings on the paper, anything that distinguished it, correct?
> A: Not from where I was sitting at, no.

5. Had the object Officer Melby actually saw in appellant's hand been distinctive or otherwise identifiable as the same object found on the alley wall, or had Officer Melby been able to describe with some particularity the paper he saw in appellant's hand, there might have been enough evidence to establish that the piece of paper on the wall was the same as the one appellant had held in his hand.

6.

> [Defense Counsel]: It's a white piece of paper and there was no one around you, right?
> [Officer Melby]: No.
> Q: You hadn't seen him exchange any objects, right?
> A: No.

that, when appellant was searched, he did not have a piece of white paper.[7] *See In re A.L.*, 839 A.2d 678, 680 (D.C.2003) (Glickman, J., dissenting) (concluding that government failed to prove defendant had deposited object in drainpipe because "none of the witnesses stated" he did not still have suspected object in his possession when searched). In short, under the circumstances recounted by Officer Melby, appellant's conduct was "insolubly ambiguous." *Rivas*, 783 A.2d at 137.

I can readily agree that the situation Officer Melby described might have appeared suspicious to an experienced police officer. And it is quite *possible* that appellant recognized—or suspected—that he was under observation by police officers and for that reason moved away from where he had been sitting and left by way of the alley to avoid the officers. Similarly, Officer Melby might have guessed right that the white piece of paper on the alley wall was the same one appellant had held in his hand. It is also possible, perhaps even probable, that if appellant recognized the officers and had marijuana in his hand, that he deposited the marijuana on a wall in the alley and was trying to walk away when he was stopped. But mere possibili-

ties and probabilities do not meet the high threshold of proof required for criminal conviction.[8] "Proof of a fact beyond a reasonable doubt is ... 'more powerful' than proof that the fact is 'more likely true than not'; more powerful, even, than proof 'that its truth is highly probable.'" *Id.* at 133 (quoting *(Darius) Smith v. United States*, 709 A.2d 78, 82 (D.C.1998) (en banc)). Here, the evidence is simply too weak to sustain a criminal conviction. As the en banc court concluded in *Rivas*, I must conclude here that "[i]f the standard of proof beyond a reasonable doubt means anything, the factors on which the government relies are not compelling enough to permit a reasonable [fact-finder] to find [appellant] guilty." 783 A.2d at 135.

Accordingly, I conclude that there was insufficient evidence to convict appellant of attempted possession of marijuana, and would reverse appellant's conviction.

---

Q: You hadn't seen anybody else reach into that white piece of paper or do anything that alarmed you or focused your attention on the white piece of paper, right?
A: No.
Q: He just had his hand cupped, looking at a white piece of paper, right?
A: That's correct.

7.

[Defense Counsel]: You didn't find anything else on my client regarding drugs, correct?
[Officer Melby]: No.
Q: You did search him right?
A: Yes.
Q: You didn't find any green weed substance or green leafy substance in his pockets or anything like that, right?

A: No.
Q: You didn't find any empty zips or bags or anything like that, right?
A: No.

8. There has been more evidence in cases where we have held that officers had reasonable articulable suspicion to make an investigatory stop, *see (Troy) Thompson v. United States*, 745 A.2d 308, 314 (D.C.2000) (for about twenty minutes officer observed "unusual conduct"—suspect sitting outside on porch in cold weather—and then saw suspect leave porch twice to speak to occupants in two different cars, then took them to alley where object was exchanged for currency), or probable cause to arrest. *See Coles v. United States*, 682 A.2d 167, 168 (D.C.1996) (officer observed defendant exchange money for ziploc bag retrieved from stash in tree box).