# District of Columbia
# Court of Appeals

**No. 14-CM-1474**

KAMONTE J. LESHER,

FILED

DEC - 1 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

Appellant,

v.                                                                          **CMD-3806-14**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: THOMPSON and MCLEESE, *Associate Judges;* and RUIZ, *Senior Judge.*

## J U D G M E N T

This case was submitted to the court on the transcript of record, the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of the Superior Court is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: December 1, 2016.

Opinion by Associate Judge Phyllis D. Thompson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CM-1474

KAMONTE J. LESHER, APPELLANT,

FILED 12/1/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-3806-14)

(Hon. Truman A. Morrison, III, Trial Judge)

(Submitted September 13, 2016          Decided December 1, 2016)

*Ian A. Williams* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman, Chrisellen R. Kolb, Kamil Shields* and *Jason B. Feldman*, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON and MCLEESE *Associate Judges*, and RUIZ, *Senior Judge*.

THOMPSON, *Associate Judge*: Following a bench trial, appellant Kamonte Lesher was found guilty of attempted possession with intent to distribute a controlled substance (marijuana) ("attempted PWID") and possession of drug paraphernalia ("PDP"). *See* D.C. Code §§ 48-904.01 (a)(1), 48-904.09, 48-1103 (a) (2012 Repl.). He asserts that the evidence was insufficient to sustain the

convictions and that the trial court reversibly erred by allowing a police officer to testify about the results of a field test.  We disagree and therefore affirm.

**I.**

The government presented evidence that on the evening of March 5, 2014, members of the Metropolitan Police Department executed a search warrant at a row house located at 725 Otis Place, N.W.  Officer Qasim Thomas testified that, while searching a large room on the second floor of the house, he found, in plain sight in the middle of the floor, a social security card, a notice of unsatisfied parking tickets, and a police report from an unrelated incident, all bearing appellant's name.[1]  Although other people were in the house during the search, no documents or personal items belonging to any other person were found in the room.  Another officer searched appellant, whom officers encountered just inside the doorway of the room, and found a green weed-like substance on his person.

---

[1]    The room measured about "20 by 20" and contained a futon (which Officer Thomas considered a bed) and a desk.  Officer Thomas also saw in a case in the room a Progressive Insurance card, but did not seize it and could not recall whether there was a name on it.  Viewing a photo of the card, the trial court remarked that it could not be sure the card was an identification card containing somebody's name as opposed to an insurance form or a business card bearing the name of an insurance agent.

Searching the rest of the room, officers found currency totaling over $2,300 in three different locations; three plastic bags containing a green weed-like substance behind the radiator (with the largest of the bags containing nine smaller-sized knotted sandwich bags of the green weed-like substance); and, on the floor in front of the futon and in close proximity to the bags of green weed-like substance, a box of empty ziplock sandwich bags and a digital scale. Officer Thomas field tested portions of the substance found on appellant's person and behind the radiator, and the test produced "a positive color reaction for THC, which is the active ingredient in marijuana."

Detective George Thomas, Jr., whom the court qualified as an expert in the areas of the distribution and use of marijuana, the packaging of marijuana for street level distribution, and the price for which marijuana is sold, testified that the green weed-like substance found behind the radiator produced "a very strong odor consistent with marijuana." Detective Thomas further testified that sandwich bags are a "common way[]" in which marijuana is packaged. Focusing on one of the bags of the green weed-like substance found behind the radiator, Detective Thomas told the court that the fact that one of the bags contained "nine small packaged bags," which reflected "labor intense" work to "remove smaller portions, and . . . place them into the smaller sandwich bags, then . . . tie them up[,]" was consistent

with distribution rather than personal use. He testified in addition that the quantity of the substance found in the bags "in combination" was not consistent with personal use. Finally, he told the court that the assortment of different-sized plastic bags (which he said corresponded to the amount of marijuana that would be sold for $5, $20 to $30, or $40 on the streets) and the "close proximity" of the bags to each other and to the digital scale and sandwich bags were "consistent with the intent to distribute."

Citing the absence of clothing and other belongings in the second-floor room, the trial court stated that the case was a "difficult and close" one in terms of whether appellant could be linked to the evidence found in the room. Nevertheless, the court found that "the inference is a natural one that [appellant] had dominion and control over the place where he allowed [his] documents to be on the floor, including his social security card." Reasoning that appellant had dominion and control over the room, the court also found that he had constructive possession of the green weed-like substance found behind the radiator, including knowledge of it, "the ability to guide its destiny, and the specific intent to do so." The court also cited as a "tiny factor" in its analysis the fact that the substance found on appellant's person appeared to have the same color as the substance found behind the radiator. Regarding whether appellant "thought he had

marijuana," the court relied on Detective Thomas's testimony that the green weed-like substance smelled like marijuana and was packaged "in a fashion that marijuana is packaged, both for personal consumption and for distribution on the street." Regarding whether the evidence proved that appellant had the intent to distribute, the court found that Detective Thomas's testimony "coupled with the [digital] scale[] and the bags" was enough to demonstrate the requisite intent.

## II.

Appellant contends there was insufficient evidence for the court to find that he constructively possessed the green weed-like substance found behind the radiator. We disagree.

"In determining whether the evidence is sufficient to support a conviction, we must review the evidence in the light most favorable to the government, giving full play to the right of the [finder of fact] to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Ortiz v. United States*, 942 A.2d 1127, 1131 (D.C. 2008) (internal quotation marks omitted). "[T]o prevail [on a claim of insufficiency of the evidence, the appellant] must establish that the

government presented no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Peery v. United States*, 849 A.2d 999, 1001 (D.C. 2004) (internal quotation marks omitted).

To prove constructive possession of a controlled substance, "the evidence must show that the accused knew of its presence and had both the ability and intent to exercise dominion and control over it." *Moore v. United States*, 927 A.2d 1040, 1050 (D.C. 2007) (citing *Rivas v. United States*, 783 A.2d 125, 129 (D.C. 2001) (en banc)). Beyond proximity to the substance and knowledge of its existence, "there must be something more in the totality of the circumstances that . . . establishes that the accused meant to exercise dominion or control over the narcotics[.]" *Rivas*, 783 A.2d at 130. This court has "often found that evidence was sufficient to establish a defendant's constructive possession of contraband where the contraband was recovered in proximity to the defendant's personal items such as mail or personal papers, photographs, and identification cards." *Schools v. United States*, 84 A.3d 503, 510 (D.C. 2013) (citing cases). Where contraband is found in a residence occupied by more than one person, "the government must also establish that the accused is more than a mere visitor to the premises[.]" *Guishard v. United States*, 669 A.2d 1306, 1312 (D.C. 1995).

In this case, the presence of appellant's social security card, police report, and parking violation notice — an assemblage of important documents that an individual would be unlikely to leave in a room where he was a casual visitor — permitted the trial court to infer that the room where officers found the green weed-like substance was, if not appellant's bedroom, at least a room over which appellant had dominion and control. Further, the absence of evidence suggesting that room was occupied by any other person permitted the court reasonably to infer that appellant was aware of what was stored or secreted in the room, including the stash of green weed-like substance behind the radiator. Also, as the trial court noted, the similarity in color of the green weed-like substance found on appellant's person and the larger amount of green weed-like substance found behind the radiator was some evidence that appellant knew of and had the ability to control the larger quantity. In addition, the evidence of the digital scale and sandwich bags in plain sight and in close proximity to the location of the bags of green weed-like substance permitted the court to infer that appellant was able to and intended to exercise control over that stash of marijuana-like substance.[2]

---

[2] Appellant also asserts, in the second-to-last sentence of the Argument section of his brief, that the government did not show he had the ability and intent to exercise dominion and control over the digital scale and sandwich bags. Because appellant did not develop this argument, we may consider it waived. *See Matthews v. United States*, 13 A.3d 1181, 1190 n.8 (D.C. 2011) (treating argument as waived because "[i]t is not enough to merely mention a possible argument in the

(continued…)

## III.

Appellant next contends that the court's finding that he was guilty of attempted possession with intent to distribute marijuana is erroneous as a matter of law because the government presented no evidence that the green weed-like substance actually was marijuana. This argument cannot be squared with our case law.

To prove attempted possession with the intent to distribute, the government must show that the defendant attempted to possess a controlled substance, but "it is not necessary to establish that the substance a defendant attempted to possess was the proscribed substance." *Seeney v. United States*, 563 A.2d 1081, 1083 (D.C. 1989). "[T]he substance 'need not [be] a controlled substance at all; what matters

_____

(…continued)

most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones" (internal quotation marks omitted)). But even if not waived, the argument is not persuasive. The evidence that the digital scale and sandwich bags were found in plain sight in a room where appellant (and no one else) was found was sufficient to prove that appellant knew of the items and had the ability to exercise control over them. The evidence that appellant — and, as far as the evidence showed, no one else — had dominion and control over the room where there was also evidence of "labor intense" work to place portions of marijuana-like substance "into . . . smaller sandwich bags" was sufficient to prove that appellant intended to "guide the[] destiny" of the scale and sandwich bags.

is that appellant believed it to be one.”’ *Newman v. United States*, 49 A.3d 321, 324 (D.C. 2012) (quoting *Washington v. United States*, 965 A.2d 35, 43 (D.C. 2009)). “[T]he defendant’s belief that he was dealing in controlled substances[] may be proved by circumstantial evidence[.]” *Fields v. United States*, 952 A.2d 859, 865 (D.C. 2008). The government must also show the defendant had the requisite intent to distribute the substance. *Seeney*, 563 A.2d at 1083.

In *Newman*, we reasoned that “the characteristics of the green plant material indicate that appellant knew (or believed) that the substance was marijuana.” 49 A.3d at 324.[3] The surrounding circumstances can also support an inference that a defendant thought a substance was an illicit substance. *See Duvall v. United States*, 975 A.2d 839, 846 n.7 (D.C. 2009). In this case, the court heard evidence from the government’s expert that the green weed-like substance both smelled like and was packaged like marijuana, and that the bags of the substance were found stuffed behind a radiator, an out-of-sight location supporting an inference that they

---

[3] Appellant endeavors to differentiate this case from *Newman* on the ground that behavior evincing consciousness of guilt (i.e., the evidence that the defendant got up and moved at “a very fast pace” away from approaching police officers and discarded the substance once he was out of the officers’ field of vision, *see* 49 A.3d at 324-25) is not in play here. But nothing in *Newman* suggested that such behavior is necessary to establish beyond a reasonable doubt that a drug-possession defendant believed the substance he possessed was a controlled substance.

had been hidden or secreted because what they contained was thought to be illegal to possess. That evidence was sufficient to enable the court to find beyond a reasonable doubt that appellant believed the substance he constructively possessed was marijuana. *Cf. Newman,* 49 A.3d at 326 (reasoning that the "smell, and packaging of the substance, and appellant's eagerness to discard it, amply supported the court's conclusion that he believed the green weed-like material to be marijuana").

## IV.

Appellant further contends the trial court erred in admitting Officer Thomas's testimony about the field test he performed on the green weed-like substance. Appellant asserts that the testimony, which linked the green weed-like substance to the "active ingredient in marijuana," was irrelevant to the *attempted* PWID charge and was also prejudicial. Appellant argues in addition that Officer Thomas improperly was permitted to give the testimony even though he had not been qualified as an expert. We conclude that we do not need to address these arguments. Even if *arguendo* evidence tending to prove that the green weed-like substance actually was marijuana was irrelevant and the court erred in admitting it without qualifying Officer Thomas as an expert, we are satisfied that no prejudice

ensued to appellant, i.e., "that the judgment was not substantially swayed by the error." *Clayborne v. United States*, 751 A.2d 956, 968 n.12 (D.C. 2000) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). The trial judge repeatedly expressed his skepticism about the evidentiary value of field tests. We discern no reason to think the trial judge placed reliance on the field-test results, given that he made no mention of the field test in announcing his findings and verdict, which were based on the officer's testimony about the smell and packaging of the green weed-like substance.

## V.

Finally, appellant contends that the evidence was insufficient to find him guilty of PDP. He asserts that in order to prove that the digital scale and sandwich bags were drug paraphernalia, the government was required to prove beyond a reasonable doubt that the weed-like substance was actually a controlled substance. Again, we disagree.

The PDP statute under which appellant was convicted, D.C. Code § 48-1103 (a)(1), generally makes it "unlawful for any person to use, or to possess with intent to use, drug paraphernalia to . . . process, prepare, test, analyze, pack, repack, store,

[or] contain . . . a controlled substance." The term "drug paraphernalia" includes

"[s]cales and balances or other objects used, intended for use, or designed for use

in weighing or measuring a controlled substance" and "containers used, intended

for use, or designed for use in packaging small quantities of a controlled

substance[.]" D.C. Code § 48-1101 (3)(E), (I) (2012 Repl.).[4] "In determining

---

[4] We interpret the phrase "intended for use" in § 48-1101(3)(E) and (I) to refer to the state of mind of the defendant. In arriving at that interpretation, we have found the Supreme Court's opinion in *Posters 'N' Things v. United States*, 511 U.S. 513, 518-19 (1994) instructive. In *Posters 'N' Things*, the Court had to interpret the phrase "primarily intended . . . for use [with illegal drugs]" as it appeared in 21 U.S.C. § 857 (d) (which defines the term "drug paraphernalia" as "any equipment, product, or material of any kind which is primarily intended or designed for use" in connection with an unlawful controlled substance). 511 U.S. at 517. The Court held that "§ 857(d) establishes objective standards for determining what constitutes drug paraphernalia [,]" rejecting the argument that § 857(d) establishes "a subjective-intent requirement on the part of the defendant." *Id.* at 517-18. In reaching that conclusion, the Court relied on 21 U.S.C. § 857 (e), explaining that:

> § 857 (e) lists eight objective factors that may be considered "in addition to all other logically relevant factors" in "determining whether an item constitutes drug paraphernalia." These factors generally focus on the actual use of the item in the community. *Congress did not include among the listed factors a defendant's statements about his intent or other factors directly establishing subjective intent.* This omission is significant in light of the fact that the parallel list contained in the Drug Enforcement Administration's Model Drug Paraphernalia Act, on which § 857 was based, includes among the relevant factors "statements by an owner . . . concerning [the object's] use" and "direct or circumstantial evidence of the intent of an

(continued…)

whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other logically and legally relevant factors . . . [t]he proximity of the object, in time and space, to a . . . controlled substance; . . . and . . . [e]xpert testimony concerning its use." D.C. Code § 48-1102 (a)(2), (12) (2012 Repl.). The government may prove that an item is drug paraphernalia "circumstantially or inferentially." *Brooks v. United States*, 130 A.3d 952, 955 (D.C. 2016).

In rejecting appellant's argument that conviction under D.C. Code § 48-1103 (a)(1) requires proof of intent to use the possessed item(s) of paraphernalia with a substance that is actually a controlled substance, we rely on a comparison of § 48-1103 (a)(1) to D.C. Code § 48-904.10. Section 48-904.10, entitled "Possession of

---

(…continued)

> owner . . . to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act.

511 U.S. at 519-20 (footnotes omitted). Thus, the Court's analysis in *Posters 'N' Things* supports a conclusion that where a drug-paraphernalia statute *does* provide that an owner's "statements" and "intent" are "factors that may be considered . . . in determining whether an item constitutes drug paraphernalia," the phrase "intended for use" in the definition of "drug paraphernalia" signals that the relevant inquiry is defendant's subjective intent with respect to use of the items. Because D.C. Code § 48-1102 (a)(1) and (4) explicitly make such factors relevant to whether an object is "drug paraphernalia," we look to the evidence of appellant's intent in determining whether the evidence was sufficient to support his conviction for PDP.

drug paraphernalia," provides generally that whoever has in his or her possession a hypodermic needle, hypodermic syringe, or other instrument that has on or in it any quantity (including a trace) of a controlled substance with intent to use it for administration of a controlled substance by subcutaneous injection in a human being shall be fined . . . or imprisoned for not more than 180 days, or both." Thus, under § 48-904.10, the government's failure to prove that the possessed paraphernalia was accompanied by at least a "trace" of a controlled substance requires acquittal. By contrast, § 48-1103 (a)(1) requires only possession of drug paraphernalia with intent to use it in connection with a controlled substance and does not require the presence of a controlled substance, whether actual or fake. *See Chambers v. United States*, 564 A.2d 26, 27 n.1 (D.C. 1989) (noting that the "paraphernalia offense defined in D.C. Code § 33-603 (a) (1988), [the prior codification of § 48-1103] . . . does not require proof that any controlled substance is present"), *overruled on other grounds, Berroa v. United States*, 763 A.2d 93, 96 (D.C. 2000). Clearly, the legislature knew how to condition a conviction for possession of drug paraphernalia on proof of presence of a controlled substance if it meant to do so. That it did not do so in § 48-1103 (a)(1) is telling.

We discussed in section III above the evidence that supported an inference that appellant possessed a green weed-like substance that he believed to be

marijuana, with the intent to distribute it. Together with that evidence, Detective Thomas's testimony that scales and sandwich bags are used in the distribution of marijuana and the evidence that the scale and sandwich bags were found in close proximity to each other[5] and to the bags of green weed-like substance that smelled like and was packaged like marijuana supported a further inference: that appellant intended to use the scales and bags to weigh and package what he believed to be marijuana. Because D.C. Code § 48-1103 (a)(1) does not require the presence of an actual controlled substance (or of any substance at all), this further inference sufficed to prove that the scales and sandwich bags were "intended for use" in weighing or packaging marijuana, D.C. Code § 48-1101 (3)(E), (I), and thus constituted drug paraphernalia. *See Williams v. United States*, 604 A.2d 420, 421 (D.C. 1992) (rejecting the argument that a conviction for possession of drug paraphernalia requires proof that the item of paraphernalia was actually used in drug activity).[6]

---

[5] The presence of the digital scale and sandwich bags together in close proximity to the green weed-like substance distinguishes this case from *Brooks*, in which we observed that "[t]he fact that a defendant possesses a single such item [associated with marijuana], standing alone, does not in our view normally suffice to permit a finding beyond a reasonable doubt that the defendant intended to use the item for a drug-related purpose." 130 A.3d at 958.

[6] Even if appellant was mistaken in his belief that the green weed-like substance was marijuana, that would not negate the intent required for the offense of PDP. *See Wiggins v. United States*, 521 A.2d 1146, 1149 n.4 (D.C. 1987) ("A

(continued…)

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*

---

(…continued)
reasonable mistake of fact constitutes a defense when it negates the criminal intent required for the offense.").